# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1120V
**Filed: November 12, 2019**
(Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                    *
DEREK SAUNDERS,                     *
                                    *
        Petitioner,                 *       Findings of Fact; Onset;
                                    *       Influenza Vaccine; Shoulder Injury
    v.                              *       Related to Vaccine Administration
                                    *       ("SIRVA").
SECRETARY OF HEALTH                 *
AND HUMAN SERVICES,                 *
                                    *
        Respondent.                 *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Meredith Daniels, Conway Homer, P.C., Boston, MA, for Petitioner.*
*Adriana Teitel, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ONSET[1]

**Oler**, Special Master:

On February 2, 2017, Derek Saunders ("Mr. Saunders" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). The petition alleges that the influenza ("flu")

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** However, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

vaccination Mr. Saunders received on October 14, 2015 caused him to suffer a Shoulder Injury Related to Vaccine Administration ("SIRVA"). Petition ("Pet.") at 1.

During the pendency of this matter, Petitioner submitted one affidavit that he authored, along with an affidavit prepared by his girlfriend. Petitioner contended that he experienced pain immediately after his flu vaccination.

I held a fact hearing on October 23, 2019, by video teleconference ("VTC") in Washington, D.C., to determine the date of onset of Petitioner's shoulder pain. Ms. Meredith Daniels appeared on behalf of Petitioner and Ms. Adriana Teitel appeared on behalf of Respondent. I heard testimony via VTC from Petitioner.

After carefully considering the testimony, the medical records, and affidavits, I find that Petitioner's left shoulder pain began within 48 hours of his vaccination.

## I.   Petitioner's Medical Records[3]

Petitioner was born in 1966. Ex. 1. He was forty-eight years old on October 14, 2015, when he received the allegedly causal flu vaccination in his left deltoid.

On October 15, 2015, Petitioner emailed Kaiser Permanente ("KP") podiatry requesting a parking permit because his foot was still healing from a recent surgery. Ex. 2 at 317. There is no mention of shoulder pain in this note.

On March 2, 2016, Petitioner called the KP advice line. The records, under chief complaint state, "Got flu shot 5 months, left arm still hurting with movement. Pain scale 5-6/10." Ex. 2 at 320.

Petitioner made an appointment with his primary care provider after this phone call. He went in to KP on March 9, 2016. The records from this visit state, "Derek A Saunders is a 49 year old male that presents today for evaluation of [l]eft arm pain that started since he got a flu shot about 6 months ago and seems to be persistent." Ex. 2 at 326.

On April 1, 2016, Petitioner again presented to KP with left arm pain. He reported the pain has been ongoing for six months and that it had been present "since flu injection." Ex. 2 at 334.

Petitioner underwent an MRI of his left shoulder on April 16, 2019. Ex. 2 at 336. The indication for the MRI is listed as "left upper arm pain x6 months. Pain started after injection." *Id.*

On June 24, 2016, Petitioner presented to KP with "left shoulder lateral sided pain which has been present since a flu shot in 10/2015." Ex. 2 at 352.

---

[3] I have summarized the medical records pertinent to the issue of left shoulder pain onset.

2

On October 31, 2016, Petitioner presented to KP for bilateral neck and arm pain. He stated that "this problem began approximately 1 year ago and was not associated with an injury." Ex. 9 at 102.

Petitioner visited KP on July 21, 2017, for a left shoulder follow-up. The history of present illness section of this record states that Petitioner's "left shoulder lateral sided pain … has been present since a flu shot in 10/2015." Ex. 15 at 13. This same annotation is present in Petitioner's KP records from August 7, 2017. *See* Ex. 15 at 29.

## II.     The Petition, Affidavits, and Testimony[4]

The Petition filed in this matter states that Petitioner experienced a left shoulder injury immediately following his October 14, 2015 vaccination. Pet. at 1.

### A.  Affidavits

#### 1.  **Affidavit of Mr. Derek Saunders**

In support of his Petition, Mr. Saunders signed his affidavit on July 26, 2017. Ex. 11. In it, he states that he received his flu vaccination in his left arm on October 14, 2015. *Id*. at 1. "Shortly thereafter," he developed severe pain in his left shoulder. *Id.* His girlfriend is a nurse, and was able to help him address the pain. *Id.*

After some months with no relief, Mr. Saunders decided to seek medical attention from his primary care physician. *Id.* at 2. He scheduled an appointment and went to his PCP's office on March 9, 2016. *Id.* He saw various medical providers for his pain after that initial visit. *Id.* at 2-3.

#### 2.  **Affidavit of Ms. Delois Howard**

Ms. Howard was Petitioner's girlfriend at the time she signed her affidavit[5] (August 16, 2017). Ex. 12 at 1. She has been a nurse for more than 30 years. *Id.* Petitioner received his flu vaccination in the middle of October 2015. *Id.* "Soon thereafter," Ms. Howard observed that Petitioner complained of pain in his left arm. *Id.* She states that Petitioner "began guarding his left arm and not performing his usual activities and household chores." *Id.*

Based on her nursing background, Ms. Howard helped Petitioner deal with his pain. She helped him use Motrin, hot and cold packs, and rest. *Id.* at 2. Ms. Howard also showed Petitioner exercises he could do in order to avoid frozen shoulder. *Id.* Even with all these therapies, Petitioner's shoulder did not improve. *Id.* Because he was not getting better, Ms. Howard

---

[4] As with the medical records, I have summarized portions of the affidavits and the Petitioner's testimony that are pertinent to the issue of onset.

[5] During the hearing, Petitioner described his relationship with Ms. Howard as "on-again/off-again." Tr. at 31.

3

recommended he speak with his doctor. *Id.* She recalls Petitioner contacting KP in March of 2016. *Id.*

### B. Testimony at the Hearing

Petitioner testified at the fact hearing. He stated that before his flu vaccination, he did not experience any pain in his arm, and did not have any limitations in his range of motion. Tr. at 17. He received the vaccination at Kaiser on October 14, 2015. *Id.* at 9. Petitioner testified that he was seated, and the nurse, who was standing, administered the vaccination about one inch from the top of his shoulder. *Id.* at 10. Petitioner testified that he felt immediate pain upon receiving the shot. *Id.* That evening, Petitioner had difficulty going to sleep because his arm still hurt. *Id.* at 11.

Petitioner generally described telling Ms. Howard about his shoulder pain, and also described the various treatments she recommended. *See* Tr. at 31-32, 40. Petitioner testified that he routinely relied on Ms. Howard for medical treatment and advice. *Id.* at 31-32.

Petitioner testified that he called the nurse's advice line approximately one month after his flu shot due to the pain he was experiencing.[6] Tr. at 16, 37.

Petitioner scheduled an appointment with his medical provider in March because he realized that the pain was not getting any better. Tr. at 37.

### III. Procedural History

On August 21, 2017, Petitioner filed a petition alleging that he suffered from SIRVA as a result of a flu vaccine administered on October 14, 2015.[7] Pet. at 1. Petitioner filed medical records on August 23, 2017, and January 12, 2018. ECF Nos. 5, 6, 15. Petitioner filed his affidavit on August 23, 2017, along with an affidavit from Ms. Delois Howard. Ex. 11, 12.

On June 25, 2018, Respondent filed a Rule 4(c) Report ("Resp's Rept."). ECF No. 24. Respondent states that Petitioner has not established a Table injury because he had not adequately documented onset of shoulder pain within 48 hours of vaccination, and because Petitioner was diagnosed with cervical radiculopathy. Resp's Rept. at 10-11. Respondent further states that Petitioner has not provided evidence that satisfies his burden of proof under *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274 (Fed. Cir. 2005), and thus has not established causation-in-fact. *Id.* at 11-12.

Petitioner filed an expert report on May 10, 2019. Ex. 16.

---

[6] Petitioner's counsel represented during the hearing that she requested the records of this phone call, but no such records exist. Tr. at 16.

[7] This case was originally assigned to the Special Processing Unit. ECF No. 4. The case was then reassigned to my docket on September 20, 2018. ECF No. 26.

4

I held a status conference with the parties on June 11, 2019 where we discussed the posture of the case. The parties agreed that a fact hearing concerning onset of pain would be helpful in moving the case forward. ECF No. 33.

I issued an order on June 28, 2019, scheduling a fact hearing in this case to determine onset of Petitioner's shoulder pain. ECF No. 34. I conducted the hearing on October 23, 2019 in Washington, D.C., via VTC. *See* Minute Entry of October 23, 2019. This matter is now ripe for a determination on facts.

## IV.    Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Human Servs.*, No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Human Servs.,* 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Human Servs.*, 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)(citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")).  "Written documentation recorded by a disinterested person at or soon after the event at issue is generally more reliable than the recollection of a party to a lawsuit many years later." *Reusser v. Sec'y of Health & Human Servs.*, 28 Fed. Cl. 516, 523 (1993).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013)(citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has Saundersted four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Human Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993).

## V.     Findings of Fact

There is a single factual issue to be determined after this hearing: the date of onset of Petitioner's left shoulder pain.

Petitioner did not seek medical treatment for his shoulder pain until approximately five months after his vaccination. I find his explanation for the delay in seeking treatment to be reasonable. Ms. Howard, a nurse, treated him at home. After it became apparent that those treatments were not helping, Petitioner called and scheduled an appointment with his primary care provider.

Once he visited the doctor, Petitioner consistently attributed the start of his left shoulder pain to his October 2015 flu vaccination. In fact, during the course of seven different calls or visits to doctors, each time, Petitioner stated that his shoulder pain started after his flu vaccination.[8] Petitioner testified at hearing that his pain was immediate after the vaccination and did not dissipate. Tr. at 10, 36. This testimony, coupled with the medical records, work in concert to provide preponderant evidence that Petitioner experienced left shoulder pain within 48 hours of his flu vaccination.

The following is therefore **ORDERED**:

---

[8] *See* Ex. 2 at 320, phone call on March 2, 2016 "Got flu shot 5 months, left arm still hurting with movement." Ex. 2 at 326, medical visit on March 9, 2016 "[l]eft arm pain that started since he got a flu shot about 6 months ago and seems to be persistent." Ex. 2 at 334, medical visit on April 1, 2016, pain has been ongoing for six months since flu injection. Ex. 2 at 336, MRI where indication is listed as "left upper arm pain x6 months. Pain started after injection." Ex. 2 at 352, medical appointment on June 24, 2016 "left shoulder lateral sided pain which has been present since a flu shot in 10/2015." Ex. 15 at 13, 29, medical appointments on July 21, 2017 and August 7, 2017 "left shoulder lateral sided pain … has been present since a flu shot in 10/2015."

6

By no later than **Monday, January 13, 2020**, the parties shall file a joint status report indicating how they would like to proceed in light of this ruling.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

7